## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TODD ALLEN MARTIN,               )
                                 )
                Plaintiff,       )
                                 )
           v.                    )        1:14CV516
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of Social    )
Security,                        )
                                 )
                Defendant.       )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Todd Allen Martin, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 12). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

### I.  PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on April 7, 2010, alleging a disability onset date of January 1, 2005. (Tr. 164-67, 168-71.) Upon denial of those applications initially (Tr. 93-94, 97-102) and on reconsideration (Tr. 95-96, 106-19), Plaintiff

requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 120-21). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 35-72), at which Plaintiff amended his alleged onset date to August 28, 2009, the day after an ALJ's unfavorable decision on Plaintiff's prior claim for benefits due to res judicata (see Tr. 42, 73-88). By decision dated January 23, 2013, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 19-34.) On March 26, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 4-8), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through June 30, 2010.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since August 28, 2009, the amended alleged onset date.
>
> 3. Since August 28, 2009, [Plaintiff] has the following "severe" physical and mental impairments: status post October 2004 traumatic injury right (non-dominant) upper extremity, a history of recurrent rotator cuff tears and AC joint impingement right shoulder, status post multiple surgeries right shoulder, June 2010, May 2008, May 2007, September 2006, and October 2005; complex regional pain syndrome (also known as reflex sympathetic dystrophy); depressive disorder, not otherwise specified; adjustment disorder with anxiety and depressed mood; and borderline intellectual functioning.
>
> . . . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . . .

5. . . . [S]ince August 28, 2009, [Plaintiff] has possessed the residual functional capacity to perform less than [a] full range of "light work[]" . . . except that [Plaintiff] can: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; occasionally use non-dominant right arm for reaching, handling, fingering, and feeling; must avoid exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; must avoid exposure to temperature extremes, so no exposure to temperatures of 80 degrees or more and 60 degrees or less; must avoid exposure to high humidity and wetness; understand, remember, and carry out simple, routine, repetitive instructions; make only simple work related decisions; deal with only occasional changes in work processes and environment; cannot maintain very strict production or performance quotas, in that the pace of work may need to vary over the course of the workday or workweek, albeit that all assigned work is completed, so no strict time requirements, no fast pace work, and no assembly-line type work; and may have a ten percent (10%) reduction in overall production from that of the average employee.

. . . .

6. [Plaintiff] is unable to perform his past relevant work.

. . . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from August 28, 2009, through the date of this decision.

3

(Tr. 25-34 (internal parenthetical citations omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited."  Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).  "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial

4

evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id.

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[1]  "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition."  Id.  "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled."  Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps:  "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work."  Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is

_____

[1]    The Act "comprises two disability benefits programs.  [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. . . .[SSI] . . . provides benefits to indigent disabled persons.  The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical."  Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[2]    "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ."  Hunter, 993 F.2d at 35 (internal citations omitted).

6

engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work

---

[3]  "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) the ALJ failed to develop the record by not "order[ing] an updated IQ evaluation and making no attempt to obtain Plaintiff's school records" (Docket Entry 9-1 at 11 (citing 20 C.F.R. §§ 404.1512(d), (e), 416.912(d), (e)));

(2) the ALJ erred by "failing to give controlling . . . weight . . . to the physical limitations opined by treating physician Dr. Rodosky" and "the mental limitations opined by [t]reating [c]ounselor Coburn and supervising psychologist Dr. McFadden," and "great weight" to "independent medical examiners Dr. Lundeen and Dr. Kaffen" (<u>id.</u> at 12, 15 (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)));

---

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. <u>See, e.g.</u>, <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(3) the ALJ erred in evaluating Plaintiff's credibility by "failing to discuss the reason [] Plaintiff was not taking medications, aggravating factors of Plaintiff's symptoms, and [s]tate agency non-examining physician Dr. Zwissler's opinion that [] Plaintiff was credible" (id. at 17 (citing 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3))); and

(4) the ALJ erred by relying upon VE testimony given "in response to an incomplete hypothetical question" and by "failing to identify and reconcile the discrepancies between the [VE's] testimony and the [Dictionary of Occupational Titles ("DOT")] and [Selected Characteristics of Occupations ("SCO")]" (id. at 19).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 4-22.)

## 1. ALJ Duty to Develop the Record

In Plaintiff's first assignment of error, he faults the ALJ for failing to fully develop the record with respect to Plaintiff's borderline intellectual functioning. (Docket Entry 9-1 at 11-12.) More specifically, Plaintiff maintains that, in light of consultative psychological examiner David R. Bousquet's invalidation of Plaintiff's verbal and full scale IQ scores of 61 and 67, respectively, on the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV") administered on May 26, 2010, "the ALJ should have ordered an updated IQ evaluation in order to obtain a valid measure of [] Plaintiff's cognitive functioning." (Id.

9

(citing Tr. 350; 20 C.F.R. §§ 404.1512(e), 416.912(e)).) Further, Plaintiff disputes the ALJ's finding "that [] Plaintiff did not meet the threshold requirement of Listing 12.05" because Plaintiff had not "evidenced significantly sub-average general intellectual functioning [and] deficits in adaptive functioning initially manifested during the developmental period." (Id. at 12 (citing Tr. 30).)[5] In that regard, Plaintiff asserts that the ALJ should have requested Plaintiff's school records and given further consideration to the fact that Plaintiff attended classes for the "developmentally disabled." (Id.) Finally, Plaintiff challenges the ALJ's reliance on the VE's testimony characterizing Plaintiff's prior job as a cemetery laborer as skilled work comparable to that of a "garden worker" (DOT 406.684-010). (Id.) Because the VE conceded that the cemetery laborer job could also be classified as "unskilled general laborer" (Tr. 69), Plaintiff argues that "the ALJ's reliance on Plaintiff's ability to perform skilled work as evidence that his intellectual deficits are not as serious as they have been reported is flawed" (Docket Entry 9-1 at 12). Plaintiff's arguments lack merit.

The ALJ's duty to further develop the record arises when an inconsistency or conflict in the evidence requires resolution or when insufficient evidence exists to assess an impairment. See 20 C.F.R. §§ 404.1519a(b), 416.919a(b); Foster v. Halter, 279 F.3d

---

[5] Notably, Plaintiff does not argue that his borderline intellectual functioning meets or equals Listing 12.05C. (See Docket Entry 9-1 at 11-12.)

348, 355-56 (6th Cir. 2001). "Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), [the ALJ] is not required to function as the claimant's substitute counsel[.]" Bell v. Chater, No. 95-1089, 57 F.3d 1065 (table), 1995 WL 347142, at *4 (4th Cir. Jun. 9, 1995) (unpublished) (internal quotation marks omitted) (citing Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994)).

Listing 12.05 provides in relevant part:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05 (emphasis added).[6]

Although Listing 12.05 "does not expressly define 'deficits in adaptive functioning' . . . '[a]daptive activities' are described

[6] Effective September 3, 2013, the Social Security Administration replaced the term "mental retardation" with "intellectual disability" in its Listing of Impairments. See Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013). Because this case commenced prior to the change and the ALJ utilized the old terminology, this Recommendation will use the term "mental retardation."

elsewhere in the [Mental Disorders] Listing . . . as 'cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office.'" Blancas v. Astrue, 690 F. Supp. 2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.05 & 12.00(C)(1)); accord Hager v. Astrue, No. 2:09CV1357, 2011 WL 1299509, at *2 (S.D.W. Va. Mar. 31, 2011) (unpublished).[7]

Here, the ALJ did not specifically discuss Plaintiff's IQ scores (or examiner Bousquet's invalidation of such scores), because the ALJ found that Plaintiff did not demonstrate "such significant subaverage general intellectual functioning and deficits in adaptive functioning as contemplated by threshold language of [L]isting 12.05 . . . [to] warrant[] further consideration of the provisions contained under Listings 12.05A, B, C, or D." (Tr. 31.) In support of that finding, the ALJ noted that Plaintiff was "able to do simple reading and writing, do simple math calculations," and "maintain[] friendships and socialize[] with friends at least once or twice a week." (Tr. 30.) Moreover, the ALJ observed that Plaintiff "lived by himself from age 18 (1981) to 2008, when he moved in with [his] father due only

---

[7] Similarly, a highly regarded treatise defines "adaptive functioning" as an individual's skills with respect to "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, and safety." Diagnostic & Statistical Manual of Mental Disorders 41 (4th ed. text rev. 2007).

12

to financial need[,] . . . performed 'skilled' (SVP 5) work at substantial gainful activity level for years before his physical injury ceased such employment[,] . . . cook[ed], [did] laundry, shop[ped], [took] care of money, [] play[ed] computer games[,] [and,] in the past, . . . traveled extensively, sometimes by himself." (Id.)  The ALJ also noted that Plaintiff had a high school education (see Tr. 32), although the ALJ did not discuss the fact that Plaintiff had attended special education classes (see Tr. 25-34).

Under comparable factual circumstances, the Fourth Circuit has upheld an ALJ's determination that the claimant did not demonstrate sufficient deficits in adaptive functioning prior to age 22.  In Hancock v. Astrue, 667 F.3d 470, 476 (4th Cir. 2012), the claimant lacked such deficits where she remained able to shop, pay bills, make change, take care of three small grandchildren, perform household chores, cook, attend school to obtain a GED, and do puzzles.[8]  Accordingly, substantial evidence supports the ALJ's finding that Plaintiff did not demonstrate sufficient deficits in adaptive functioning before age 22 to warrant consideration of Plaintiff's IQ scores under Listing 12.05C, and the ALJ thus did

---

[8] Although the Fourth Circuit found these characteristics sufficient to support a finding of an absence of deficits in adaptive functioning, it did not intimate that those (or comparable) capabilities constituted the minimum that would suffice to support such a finding.  See Hancock, 667 F.3d at 475-75 & n.3. Hancock thus provides a valuable comparison standard for assessing an ALJ's findings regarding the adaptive functioning requirement, but does not identify an outer boundary in this context.

not have a duty to further develop the record by ordering new IQ tests.

Plaintiff asserts that the ALJ erred by "failing to request Plaintiff's school records." (Docket Entry 9-1 at 12.) However, the ALJ asked Plaintiff's counsel at the hearing if he had been given "an opportunity to review the record," to which Plaintiff's counsel answered, "I have, Your Honor." (Tr. 38.) The ALJ then asked: "Any objection to any exhibits, sir?" (id.); Plaintiff's counsel responded: "No objections, Your Honor" (id.). At the conclusion of the hearing, Plaintiff's counsel neither asked the ALJ to hold the record open so that counsel could obtain the school records nor requested the ALJ to obtain the records himself. (Tr. 71-72.) Having failed to raise the issue of missing school records at the hearing, Plaintiff cannot wait until after the ALJ issues his decision to challenge the ALJ's development of Plaintiff's academic record. See Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (holding duty to develop record "does not permit a claimant, through counsel, to rest on the record — indeed, to exhort the ALJ that the case is ready for decision — and later fault the ALJ for not performing a more exhaustive investigation"); Gatling v. Astrue, Case No. 2:211-cv-0021-FL, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (unpublished) (rejecting argument that ALJ failed to develop record where claimant's counsel neither advised ALJ that record lacked any evidence nor requested ALJ's

14

assistance in procuring additional materials). Moreover, "[Plaintiff's] attorney does not identify what the missing [school records] would have shown; rather, []he merely speculates that having the evidence might have produced a different result." Scarberry v. Chater, No. 94-2000, 52 F.3d 322 (table), 1995 WL 238558, at *4 (4th Cir. Apr. 25, 1995) (unpublished) (internal quotation marks omitted).

Finally, Plaintiff disputes the ALJ's reliance, in finding insufficient adaptive functioning deficits, on the VE's categorization of Plaintiff's cemetery laborer job as skilled work. (Docket Entry 9-1 at 12.) According to Plaintiff, the VE "[c]learly . . . misidentified Plaintiff's past relevant work" by citing DOT job number 406.684-010, which reflects a Specific Vocational Preparation ("SVP") of 5 (indicating 6 months to one year needed to learn job) and "describ[es] the tasks of a garden worker." (Id.) Plaintiff further asserts that the VE "conceded that Plaintiff's job could be classified as an unskilled general laborer." (Id. (citing Tr. 69).)

Plaintiff's arguments on these points fail for two reasons. First, DOT job number 406.684-010 bears the title "Cemetery Worker" and alternative title "Gravedigger." DOT No. 406.684-010, 1991 WL 673339 (G.P.O. 4th ed., rev. 1991). The job duties described include, inter alia, digging graves to a specified depth using a pick and shovel or backhoe, mowing grass, pruning shrubs, trimming

15

trees, and removing leaves and other debris from graves. <u>Id.</u>
Plaintiff does not explain why the duties described by the <u>DOT</u>
position "Cemetery Worker" do not adequately encompass the
responsibilities of Plaintiff's prior work. (Docket Entry 9-1 at
12; <u>see also</u> Tr. 55 (reflecting Plaintiff's testimony that he dug
graves using a jack hammer and "other stuff," took care of lots in
the summers, and blew leaves in the fall).) Second, the VE did not
concede that Plaintiff's prior work could be categorized as
"unskilled general laborer." (<u>See</u> Tr. 69-70.) Rather, the VE,
when asked by Plaintiff's counsel, merely acknowledged that another
VE, in an earlier hearing on Plaintiff's first claim for benefits,
might have classified Plaintiff's prior work as "unskilled general
laborer," but expressed no opinion on whether he agreed with that
classification and did not alter his stated opinion that "Cemetery
Worker" constituted the correct match for Plaintiff's prior work.
(<u>Id.</u>) Under these circumstances, the ALJ did not err in relying,
in part, on Plaintiff's performance of skilled work over a number
of years in finding insufficient deficits in adaptive functioning.

In sum, Plaintiff's first assignment of error fails to warrant
relief.

### 2. Evaluation of Medical Opinion Evidence

Next, Plaintiff argues that the ALJ erred by "failing to give
controlling weight . . . to the physical limitations opined by
treating physician Dr. [Mark W.] Rodosky" (Docket Entry 9-1 at 12)

16

and "to the mental limitations opined by [t]reating [c]ounselor [William R.] Coburn[, M.A., L.P.C] and supervising psychologist Dr. [John F.] McFadden." (id. at 15). Plaintiff additionally faults the ALJ for not affording "great weight . . . to the physical limitations opined by . . . independent medical examiners Dr. [James] Lundeen[, Sr.] and Dr. [Sheldon] Kaffen." (Id. at 12.) According to Plaintiff, these providers' opinions hold consistency both with their own treatment notes and with other medical evidence of record and, thus, the ALJ erred by affording the opinions "minimal" weight and by relying instead on the opinions of the state agency physicians and consultative examiners. (Id. at 13-17.) Plaintiff's arguments regarding Dr. Rodosky's opinion have merit.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of

each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

Dr. Rodosky, an orthopedic surgeon, performed arthroscopic rotator cuff repair and subacromial decompression with acromioplasty on Plaintiff's right shoulder on both May 20, 2008, and June 22, 2010. (See Tr. 391-97.) In between these two procedures, Dr. Rodosky examined Plaintiff on February 9, 2009, and opined that Plaintiff's right shoulder had reached "maximum medical improvement," and warranted restriction to "permanent sedentary duty, 1-pound lifting to waist level, no use of the arm above waist level, and no repetitive use of the arm." (Tr. 380.)

In discussing Dr. Rodosky's opinion, the ALJ noted that he did "not find [Dr. Rodosky's] assessment/opinion to be well-supported by the contemporaneous ongoing medical treatment notes and medical

18

reports of treating and evaluating physicians and the other contemporaneous medically acceptable clinical and laboratory diagnostic techniques in the hearing record" and did "not find said assessment/opinion to be inconsistent [sic] with other substantial evidence in the hearing record." (Tr. 27.)[9] Later, the ALJ stated that, "[t]o the extent that findings indicate that [Plaintiff] is limited to performing sedentary work involving no significant use of his left upper extremity and/or his lower extremities; the [ALJ] grants minimal weight to the opinions of physicians, the treating orthopedic surgeon [Dr. Rodosky], and the treating sports medicine/rehabilitative specialist . . . ." (Tr. 31–32 (citing Tr. 314 (Dr. Arsal Ahmad's 2/11/09 opinion), 317 (Dr. Sheldon Kaffen's 10/5/07 opinion), 319 (Dr. Gary Routson's 4/17/07 opinion), 324 (Dr. Gregory Hill's 6/20/06 opinion), 329 (Dr. Gregory Fisher's 9/20/05 opinion), 338 (Dr. James Lundeen, Sr.'s 8/30/05 opinion), 380 & 407 (Dr. Rodosky's 2/9/09 opinion), 507 (Dr. Rodosky's 10/24/08 opinion), 565 (Dr. John Kuruc's 9/8/09 opinion), 576[10] (Dr. Kuruc's 6/5/07 opinion)).) The ALJ also concluded that these "opinions occurred prior to [Plaintiff's] amended alleged onset

---

[9] Within the context of the ALJ's earlier statement that contemporaneous medical records did not support Dr. Rododsky's opinion (see Tr. 27), the ALJ's use of the word "inconsistent" instead of "consistent" appears to constitute a typographical error.

[10] Although the ALJ cited to "Exhibit **25F**, pg 34" (Tr. 32 (emphasis added)), Exhibit 25 contains only 4 pages (see Tr. 594–97). The ALJ apparently intended to cite to Exhibit **24F**, page 34, which contains Dr. Kuruc's June 5, 2007 opinion. (See Tr. 576.)

date, as the evidence of record has established that [Plaintiff's] level of functioning has improved since then." (Tr. 32.)

The ALJ's assessment of the treating orthopedic surgeon's opinion falls far short of the regulatory requirements. Although the ALJ concluded that "the contemporaneous ongoing medical treatment notes" and "contemporaneous medically acceptable clinical and laboratory diagnostic techniques" did not support Dr. Rodosky's opinions (Tr. 27), the ALJ failed to provide <u>any</u> specifics regarding such allegedly inconsistent evidence in the record (<u>see</u> Tr. 26-32). An ALJ does not fulfill his duty to evaluate treating source opinions by reciting boilerplate standards without any accompanying factual and evidentiary support. See <u>Vann v. Colvin</u>, No. 1:14-cv-00089-MOC, 2015 WL 356951, at *5 (W.D.N.C. Jan. 27, 2015) (unpublished) (remanding case where ALJ merely cited boilerplate treating source rule and did "not specifically cite which clinical findings and diagnostic testing he [found] to be inconsistent with [the treating source's] opinion on lifting and carrying" and noting that "[i]t [was] not obvious to this court, upon review, what evidence the ALJ [found] inconsistent, particularly since the ALJ's summary of medical evidence indicates that Plaintiff does, indeed, have a history of pain, reduced grip strength, and numbness in her left arm, which would affect her ability to lift and carry heavier objects"); <u>see generally</u> Social Security Ruling 96-2p, <u>Titles II and XVI: Giving Controlling Weight</u>

to Treating Source Medical Opinions, 1996 WL 374188, at *5 (July 2, 1996) (requiring that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record" (emphasis added)).

Moreover, judicial review does not require the Court to comb the ALJ's recitation of a claimant's treatment history to piece together substantial evidence that conflicts with the treating source's opinion. See Cira v. Colvin, 67 F. Supp. 3d 1206, 1210 (D. Colo. 2014) (ordering remand and observing that "court is neither required — nor, indeed, empowered — to parse through the record to find specific support for the ALJ's decision"); see also Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

As described above, the ALJ later lumped Dr. Rodosky's February 9, 2009 opinion with nine other opinions from treating and examining sources, including an earlier opinion from Dr. Rodosky, and then dismissed all of these opinions, en masse, "[t]o the extent" such opinions limit Plaintiff to "sedentary work involving no significant use of his left upper extremity and/or his lower extremities" and because such opinions pre-dated the amended

21

alleged onset date.  (Tr. 31-32 (emphasis added).)  The former
basis for discounting Dr. Rodosky's opinion does not hold true, as
Dr. Rodosky addressed Plaintiff's right arm (Tr. 380) not "his left
upper extremity and/or his lower extremities" (Tr. 31-32).
Further, the ALJ's statement that Dr. Rodosky offered the opinion
at issue approximately six and a half months prior to Plaintiff's
amended alleged onset date does not, under the circumstances of
this case, provide a sufficient basis to reject Dr. Rodosky's
opinion.

Although Plaintiff's right shoulder symptoms may arguably have
shown some temporary improvement after Dr. Rodosky offered the
opinion in question (see, e.g., Tr. 299-306 (July 22, 2009
consultative examination by Dr. William D. Padamadan finding
Plaintiff's right shoulder range of motion moderately improved)),
by May, 2010, an MRI arthrogram demonstrated a "near complete"
recurrent rotator cuff tear which Dr. Rodosky opined would "require
a takedown of the complete portion and extensive debridement, and
re-repair" (Tr. 377).  Dr. Rodosky performed the repair on June 22,
2010 (see Tr. 391-93), and did not offer a subsequent, less
restrictive opinion (see Tr. 374-421, 473-74).  Under these
circumstances, the ALJ's discounting of Dr. Rodosky's opinion based
on the passage of time cannot stand.  See Cotton v. Colvin, No.
5:14-CV-00425-FL, 2015 WL 5725518, at *7 (E.D.N.C. Aug. 12, 2015)
(unpublished) (holding that, "[w]here evidence predating the onset

of disability is <u>relevant</u> to an issue in the case, the ALJ should consider that evidence in making a determination on the issue," and remanding case for ALJ's failure to "reasonably articulate[]" grounds for discounting physician's opinion predating onset date by over one year (emphasis added)); <u>see also</u> <u>Peters v. Astrue</u>, No. 6:10-cv-00941-RBH, 2011 WL 3876921, at *5 (D.S.C. Sept. 1, 2011) (unpublished) (observing that, "if [a physician's] restrictions [that predate the onset date] . . . are permanent, they continue into and encompass the relevant time period," and finding error in ALJ's failure to consider such restrictions).

Finally, the ALJ's failure to properly analyze Dr. Rodosky's opinion does not constitute harmless error. Although an ALJ's failure to sufficiently evaluate a medical source's opinion can amount to harmless error, such as where the plaintiff otherwise fails to show how a proper weighing of the opinion would have altered his or her RFC, <u>see, e.g.</u>, <u>Tanner v. Colvin</u>, 602 F. App'x 95, 100-01 (4th Cir. 2015), here, Dr. Rodosky's opinion restricting Plaintiff to <u>no</u> use of the right arm above the waist (<u>see</u> Tr. 380 (emphasis added)) calls into question the ALJ's determination that Plaintiff remained capable of occasional reaching with the right arm (Tr. 26). Moreover, the VE testified that, if the hypothetical question relied on by the ALJ changed to preclude all reaching with the right arm, the jobs cited by the VE "would not be available." (Tr. 68.) Further, Dr. Rodosky's right arm limitation above the

waist harmonizes with the opinions of multiple other treating, examining, and consultative sources of record (see Tr. 335 (opinion of Dr. Lundeen that reaching with right arm "very limited"), 426 & 472 (opinion of state agency physician, Dr. Walter Holbrook, affirmed by reconsideration state agency physician, Dr. Eli Perencevich, restricting all overhead reaching with right arm), 565 (opinion of Dr. Kuruc placing "marked" limits on reaching with right arm and noting Plaintiff's inability "to raise [his] right arm above 60 [degrees] or direct it outward in front of him")), including, in particular, the opinion of consultative examiner, Dr. William Padamadan, given "great" weight by the ALJ (see Tr. 32; see also Tr. 301 (Dr. Padamadan's opinion that Plaintiff "may have difficulty with using the non-dominant right upper extremity especially for overhead activities")).

In sum, the ALJ's failure to adequately explain or support his decision to afford Dr. Rodosky's opinions "minimal" weight (Tr. 31) constitutes reversible error. Reassessment of Dr. Rodosky's opinion will necessitate reconsideration of the opinions of Drs. Lundeen and Kaffen, which also address physical limitations faced by Plaintiff as a result of his right arm impairment.

Further, the ALJ limited her consideration of counselor Coburn's opinion based on the conclusion that counselor Coburn constituted an "other source" under the regulations. (Tr. 28 (citing 20 C.F.R. § 404.1513(d)).) The ALJ should reassess that

24

conclusion in light of the fact that Dr. McFadden, a supervising psychologist, also signed off on counselor Coburn's restrictions (Tr. 523, 527).  See generally Taylor v. Commissioner of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011) (holding that nurse practitioner could qualify as "acceptable medical source" where she worked under physician's close supervision such that she acted as physician's agent).

Finally, because re-evaluation of the opinions of Drs. Rodosky, Lundeen, and Kaffen, as well as of the opinion of counselor Coburn (as endorsed by Dr. McFadden) may result in re-evaluation of Plaintiff's credibility, as well as a different RFC determination and corresponding hypothetical question, the Court should decline at this time to address Plaintiff's assignments of error regarding those matters.[11]

### III.  CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded

---

[11] Plaintiff argues that "the ALJ erred in failing to identify and reconcile the discrepancies between the VE's testimony and the [DOT] and the [SCO] pursuant to [Social Security Ruling] 00-4p." (Docket Entry 9-1 at 20.)  In particular, Plaintiff asserts that, according to these treatises, the job of school crossing guard, cited by the VE as within Plaintiff's RFC, requires frequent reaching and exposure to temperatures lower than 60 degrees and warmer than 80 degrees, both of which exceed the ALJ's RFC.  (Id. at 20-21.)  Similarly, Plaintiff contends that the other position offered by the VE, school bus monitor, also would require him to exit the bus and experience the precluded temperature extremes.  (Id. at 21.)  These arguments appear to have some merit.  If, upon remand, the ALJ ultimately adopts an RFC similar to the one previously adopted, the ALJ should carefully assess whether the jobs, if any, offered by the VE fully accommodate all of the restrictions, exertional and non-exertional, included in the RFC.

25

under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings that properly address the opinions of Drs. Rodosky, Lundeen, and Kaffen, and counselor Coburn (as endorsed by Dr. McFadden), in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c).  As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied and Plaintiff's Motion for Judgment on the Administrative Record and Pleadings Pursuant to Fed. R. Civ. P. 12(c) (Docket Entry 9) should be granted in part (i.e., to the extent it requests remand).


                              /s/ L. Patrick Auld
                            **L. Patrick Auld**
                    **United States Magistrate Judge**


October 13, 2015